******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

HSBC BANK USA, NATIONAL ASSOCIATION,
TRUSTEE *v.* LESLIE I. NATHAN
ET AL.
(AC 40222)

Bright, Moll and Harper, Js.

*Syllabus*

The plaintiff bank, H Co., sought to foreclose a mortgage on certain real
property owned by the defendants L and W and the defendant trust,
who filed special defenses and a counterclaim. Specifically, they alleged,
inter alia, that the equitable doctrine of laches applied to the plaintiff's
conduct and that the plaintiff had violated the Connecticut Unfair Trade
Practices Act (CUTPA) (§ 42-110a et seq.). The trial court granted the
plaintiff's motion to strike the first amended laches defense and the
counterclaim in its entirety. L and W and the trust then filed a second
amended counterclaim and special defenses, in which, inter alia, they
repleaded four counts of their first amended counterclaim and repleaded
laches as a special defense. The trial court granted the plaintiff's motion
to strike the second amended laches defense and the counterclaim in
its entirety and, subsequently, rendered judgment of strict foreclosure,
from which L and W and the trust appealed to this court. On appeal,
they claimed that the trial court improperly granted the plaintiff's first
motion to strike as to the nonrepleaded counts and the second motion
to strike the second amended laches defense and second amended
counterclaim. The plaintiff claimed that certain nonrepleaded counts of
their first amended counterclaim as well as a special defense of unclean
hands had been abandoned. *Held*:

1. Contrary to the plaintiff's claim, L and W and the trust preserved their
   right to appeal the nonrepleaded counts of their first amended counter-
   claim: the correct course of action for a litigant to take in order to
   preserve appellate rights as to a stricken pleading is to forgo pleading
   over, await the rendering of a final judgment and appeal therefrom, and
   the defendants' statement in their objection to the plaintiff's second
   motion to strike that they were not reasserting counts involving only
   postdefault conduct was a decision by the defendants, in an effort to
   preserve their appellate rights, not to replead those counts with modified
   allegations in an effort to cure the purported deficiencies therein, rather
   than an abandonment of the counts; nevertheless, the defendants having
   expressly stated in their objection that the first amended unclean hands
   defense had been abandoned, that statement was an unequivocal relin-
   quishment of the first amended unclean hands defense, and the defen-
   dants, having abandoned that defense, could not now ask this court to
   consider whether the trial court's striking thereof constituted error.

2. The trial court erred in striking the nonrepleaded counts, the second
   amended laches defense and the second amended counterclaim on the
   ground that they did not satisfy the making, validity or enforcement
   test; the allegations in the pleadings of L and W and the trust related
   to the enforcement of the note or mortgage in that those defendants
   raised allegations of postorigination misconduct by the plaintiff that,
   inter alia, increased their debt and hindered their ability to cure their
   default.

Argued January 15, 2019—officially released January 14, 2020

*Procedural History*

Action to foreclose a mortgage on certain real prop-
erty owned by the named defendant et al., brought to
the Superior Court in the judicial district of Middlesex,
where the defendant Gerri N. Russo was defaulted for
failure to appear; thereafter, the defendant Webster
Bank, National Association was defaulted for failure to
plead; subsequently, the named defendant et al. filed

an amended counterclaim; subsequently, the court, *Aurigemma, J.*, granted the plaintiff's motion to strike the amended special defenses and counterclaim in part; thereafter, the named defendant et al. filed a second amended counterclaim; subsequently, the court granted the plaintiff's motion to strike the second amended special defenses and counterclaim; thereafter, the court, *Domnarski, J.*, concluded that the plaintiff was entitled to enforce the note by foreclosing on the mortgage; subsequently, the court, *Aurigemma, J.*, granted the plaintiff's motion for a judgment of strict foreclosure and rendered judgment thereon, from which the named defendant et al. appealed to this court; subsequently, this court dismissed, for lack of a final judgment, the portion of the appeal challenging the trial court's striking of the counterclaim as amended; thereafter, the court, *Frechette, J.*, granted the plaintiff's motion for judgment on the stricken counterclaim as amended and the named defendant et al. filed an amended appeal; subsequently, this court, sua sponte, issued an order staying the appeal pending the final disposition by the Supreme Court in *U.S. Bank National Assn.* v. *Blowers*, 332 Conn. 656, 212 A.3d 226 (2019); thereafter, following the release of the opinion in *Blowers*, the Appellate Court lifted the stay and, sua sponte, ordered the parties to submit supplemental briefing, and the parties thereafter filed supplemental briefs. *Reversed; further proceedings*.

*Karen L. Dowd*, with whom was *Scott Garosshen*, for the appellants (defendants).

*David M. Bizar*, for the appellee (plaintiff).

*Opinion*

MOLL, J. The defendants, Leslie I. Nathan, Lynne W. Nathan, and Lynne W. Nathan, Trustee of the Lynne W. Nathan Trust Agreement dated November 19, 2001,[1] appeal from the judgment of strict foreclosure and the judgment on their counterclaim, as amended, rendered by the trial court in favor of the plaintiff, HSBC Bank USA, National Association, Trustee.[2] On appeal, the defendants claim that the court erred in striking two of their special defenses, as amended, and their counterclaim, as amended.[3] We reverse the judgments of the trial court.

The following facts and procedural history are relevant to our disposition of this appeal. In August, 2014, the plaintiff commenced this foreclosure action. In its complaint, the plaintiff alleged the following relevant facts. On or about April 12, 2007, Leslie and Lynne executed a promissory note, in the principal amount of $560,000, in favor of Wells Fargo Bank, N.A. (Wells Fargo). To secure the note, the Lynne Trustee executed a mortgage on real property located at 115 Second Avenue in Westbrook. On April 17, 2007, the mortgage deed was recorded on the Westbrook land records. The mortgage was to be assigned to the plaintiff by virtue of an assignment to be recorded on the Westbrook land records, and the plaintiff was the holder of the note. Leslie and Lynne thereafter defaulted on the note,[4] and they failed to cure the default following receipt of written notice of the default from the plaintiff. Thereafter, the plaintiff elected to accelerate the balance due on the note, to declare the note to be due in full, and to foreclose the mortgage.

On June 8, 2015, the defendants filed a first amended answer, special defenses, and counterclaim.[5] The defendants asserted three special defenses: (1) lack of standing; (2) laches; and (3) unclean hands. In the counterclaim, the defendants asserted the following twelve counts: (1) equitable reduction of interest on the ground that the plaintiff failed to mitigate its damages (count one); (2) the plaintiff was improperly pursuing attorney's fees and costs accrued in relation to a prior foreclosure action, with docket number MMX-CV-10-6002743-S (prior foreclosure action), which the plaintiff had commenced against the defendants in 2010 and which was dismissed in 2013 (count two); (3) intentional infliction of emotional distress (count three); (4) negligent infliction of emotional distress (count four); (5) breach of the covenant of good faith and fair dealing (count five); (6) unjust enrichment (count six); (7) violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (count seven); (8) violation of the Creditors' Collections Practices Act, General Statutes § 36a-645 et seq. (count eight); (9) vexatious litigation (count nine); (10) fraud (count ten); (11) negligence (count eleven); and (12) violation of the Connecticut Unfair

Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. (count twelve). As relief, the defendants sought, inter alia, compensatory damages and an equitable reduction in principal and interest.

On July 8, 2015, the plaintiff filed a motion to strike the defendants' first amended special defenses and counterclaim, claiming, inter alia, that the defendants' claims and defenses did not relate to the making, validity, or enforcement of the note or mortgage. The defendants objected to the motion. On December 28, 2015, the trial court, *Aurigemma, J.*, issued a memorandum of decision granting the motion to strike as to the first amended laches defense, unclean hands defense, and counterclaim in its entirety.[6]

On January 12, 2016, the defendants filed a second amended counterclaim and special defenses. In the counterclaim, the defendants repleaded counts five, six, ten, and twelve of the first amended counterclaim. They did not replead counts one, two, three, four, seven, eight, nine, or eleven thereof. In addition, the defendants reasserted their first amended special defense asserting lack of standing, which had not been stricken by the court, and repleaded laches as a special defense, but they did not replead unclean hands as a special defense.

On February 9, 2016, the plaintiff filed a motion to strike the defendants' second amended laches defense and counterclaim, claiming, inter alia, that the defendants' claims and second amended laches defense failed to satisfy the making, validity, or enforcement test. The defendants objected to the motion. On March 28, 2016, the court issued an order granting the motion to strike the second amended laches defense and counterclaim in its entirety.

On August 25, 2016, following a one day court trial conducted on May 19, 2016, the court, *Domnarski, J.*, issued a memorandum of decision concluding that the plaintiff was entitled to enforce the note by foreclosing the mortgage. The court also made findings regarding the debt and the value of the subject property. Thereafter, the plaintiff filed a motion for a judgment of strict foreclosure, which the court, *Aurigemma, J.*, granted on February 21, 2017. This appeal followed.[7]

On January 17, 2019, following oral argument held on January 15, 2019, this court, sua sponte, issued an order staying the appeal pending the final disposition by our Supreme Court of *U.S. Bank National Assn.* v. *Blowers*, 332 Conn. 656, 212 A.3d 226 (2019), in which the court resolved the dispositive certified question of whether special defenses and a counterclaim asserted in a foreclosure action must "directly attack" the making, validity, or enforcement of the note or mortgage. On August 27, 2019, following the release of our Supreme Court's opinion in *Blowers*, this court lifted the appel-

late stay and, sua sponte, ordered the parties to submit supplemental briefs to address the impact, if any, of *Blowers* on the defendants' claims on appeal.[8] The parties thereafter filed supplemental briefs in accordance with this court's order.

I

Before reaching the merits of the defendants' claims on appeal, we first address the plaintiff's argument that the defendants abandoned (1) counts one, two, three, four, seven, eight, nine, and eleven of the first amended counterclaim (nonrepleaded counts) and (2) their first amended unclean hands defense, thereby forfeiting their appellate rights to challenge the court's decision striking them. We conclude that the defendants (1) preserved their appellate rights as to the nonrepleaded counts, but (2) abandoned their first amended unclean hands defense and, therefore, cannot contest on appeal the court's striking thereof.

The following additional facts and procedural history are relevant to this claim. In their second amended counterclaim, the defendants repleaded counts five, six, ten, and twelve of their first amended counterclaim, but they did not replead the other eight counts thereof. Additionally, the defendants reasserted their special defense sounding in standing and repleaded laches as a special defense, but they did not replead unclean hands as a special defense. Thereafter, the plaintiff moved to strike the second amended laches defense and the second amended counterclaim. The defendants filed a written objection, stating in relevant part: "[The defendants' pleading setting forth their second amended special defenses and counterclaim] realleges the laches special defense . . . . It abandons the unclean hands special defense. It also realleges [counts five, six, ten, and twelve of the first amended counterclaim] . . . . [The nonrepleaded counts] involving only postdefault conduct have not been reasserted."

The plaintiff first argues that the defendants' failure to replead the nonrepleaded counts and their first amended unclean hands defense constitutes a waiver of any alleged error in the court's striking thereof. This contention is unavailing, as the correct course of action for a litigant to take in order to preserve his or her appellate rights as to a stricken pleading is to forgo pleading over, await the rendering of a final judgment, and appeal therefrom. See *Himmelstein* v. *Windsor*, 116 Conn. App. 28, 32, 974 A.2d 820 (2009) (plaintiff preserved appellate rights with respect to stricken counts of original complaint by not repleading stricken counts in amended complaint), aff'd, 304 Conn. 298, 39 A.3d 1065 (2012); *Suffield Development Associates Ltd. Partnership* v. *National Loan Investors, L.P.*, 64 Conn. App. 192, 194 n.2, 779 A.2d 822 (2001) (plaintiff sought to preserve appellate rights as to certain stricken counts by not repleading those counts in amended complaint),

rev'd in part on other grounds, 260 Conn. 766, 802 A.2d 44 (2002).[9]

The plaintiff next argues that, on the basis of their statements in their objection to its February 9, 2016 motion to strike, the defendants expressly abandoned the nonrepleaded counts and the first amended unclean hands defense. "[T]he interpretation of pleadings is always a question of law for the court . . . ." (Internal quotation marks omitted.) *Bridgeport Harbour Place I, LLC* v. *Ganim*, 111 Conn. App. 197, 202 n.4, 958 A.2d 210 (2008), aff'd, 303 Conn. 205, 32 A.3d 296 (2011).

As to the nonrepleaded counts, the defendants stated in the objection that those counts, "involving only post-default conduct," had "not been reasserted" in the second amended counterclaim. We do not construe that statement as an abandonment of the nonrepleaded counts; rather, we interpret it to mean that the defendants, in an effort to preserve their appellate rights, decided not to replead those counts with modified allegations in an effort to cure the purported deficiencies therein. See *Lund* v. *Milford Hospital, Inc.*, 326 Conn. 846, 850, 168 A.3d 479 (2017). Accordingly, we reject the plaintiff's argument as to the nonrepleaded counts.

In contrast, the defendants expressly stated in their objection that the first amended unclean hands defense had been "abandon[ed]." The defendants characterize their use of the term "abandon[ed]" as "not ideal" and "unfortunate"; however, they contend that the statement at issue should be interpreted as being synonymous with their other statement, located within the same paragraph of the objection, that the nonrepleaded counts had "not been reasserted." We are not persuaded. The defendants chose to describe their first amended unclean hands defense as having been "abandon[ed]," as opposed to not "reasserted" or "realleged." Litigants routinely and unambiguously use the term "abandon" to convey their decision not to preserve or otherwise pursue a claim, a defense, or a particular position, and we perceive no ambiguity in the defendants' use of the term here. Instead, we construe the defendants' statement as an unequivocal relinquishment of the first amended unclean hands defense. Having abandoned the first amended unclean hands defense, the defendants cannot now ask this court to consider whether the trial court's striking thereof constituted error.[10]

## II

We now address the merits of the defendants' claim that the court improperly granted (1) the plaintiff's July 8, 2015 motion to strike as to the nonrepleaded counts and (2) the plaintiff's February 9, 2016 motion to strike the defendants' (a) second amended laches defense and (b) second amended counterclaim. For the reasons set forth subsequently in this opinion, we agree.

The following additional facts and procedural history are relevant. On June 8, 2015, the defendants filed their first amended answer, special defenses, and counterclaim. In support of their first amended laches defense, the defendants alleged, in a conclusory manner, that the "[p]laintiff's action is barred by the equitable doctrine of laches." With respect to their first amended counterclaim, the defendants made various allegations concerning misconduct that the plaintiff purportedly engaged in following their January, 2010 default on the note. For instance, the defendants alleged that (1) Wells Fargo, the plaintiff's purported servicer of the loan, refused to accept certain payments from them, thereby causing them to incur exacerbated interest charges, and (2) the plaintiff and Wells Fargo repeatedly failed to send representatives to speak with the defendants at mediation sessions held during the course of the prior foreclosure action and otherwise frustrated the defendants' efforts to discuss modifications of their loan, causing them harm.

In its July 8, 2015 motion to strike, the plaintiff claimed that the first amended laches defense (1) was not supported by any allegations of fact, (2) did not relate to the making, validity, or enforcement of the note or mortgage, and (3) was not a legally cognizable defense. With respect to the twelve counts of the first amended counterclaim, the plaintiff asserted that they (1) did not relate to the making, validity, or enforcement of the note or mortgage, and (2) were not legally sufficient. In its December 28, 2015 memorandum of decision granting, in part, the July 8, 2015 motion to strike, the court struck the first amended laches defense on the basis of its determinations that (1) the defense was devoid of any supporting factual allegations, and (2) to the extent that the defendants were relying on allegations in the first amended counterclaim that Wells Fargo delayed offering them a loan modification, Connecticut law does not impose a duty on a mortgagee to provide a loan modification. In striking the first amended counterclaim in its entirety, the court construed the allegations therein as concerning (1) payments remitted by the defendants subsequent to their default, (2) the parties' failed attempts to modify the loan, (3) the plaintiff's debt collection activities, or (4) litigation in the prior foreclosure action, all of which had occurred after the execution of the note or mortgage. The court concluded that the allegations in the first amended counterclaim did not relate to the making, validity, or enforcement of the note or mortgage, and, therefore, the first amended counterclaim could not be joined with the plaintiff's complaint.

Thereafter, the defendants filed their second amended laches defense and counterclaim. In support of the second amended laches defense, the defendants alleged that the plaintiff had engaged in dilatory behav-

ior during the course of the prior foreclosure action, inter alia, by failing to send agents with knowledge of the case and/or settlement authority to mediation sessions and by initiating the prior foreclosure action despite lacking sufficient documentation to establish its standing to pursue that action. The defendants further alleged that the plaintiff's misconduct had prejudiced them, inter alia, by depleting their equity in the subject property. As to the second amended counterclaim, the defendants repleaded therein counts five, six, ten, and twelve—sounding in breach of the implied covenant of good faith and fair dealing, unjust enrichment, fraud, and a violation of CUTPA, respectively—of the first amended counterclaim. In support thereof, the defendants set forth allegations primarily concerning purported misconduct by the plaintiff that predated their default on the note. For example, the defendants alleged that (1) in early 2009, prior to their default, Wells Fargo had represented to them that they could obtain a loan modification within three months, but Wells Fargo thereafter engaged in intentional dilatory conduct that resulted in an untimely loan modification offer that contained terms that were inconsistent with previous representations made by Wells Fargo, and (2) Wells Fargo made false representations to the defendants during their discussions regarding a loan modification. The defendants further alleged that they were harmed by these actions.

In its February 9, 2016 motion to strike, the plaintiff asserted that the allegations set forth in support of the second amended laches defense and the second amended counterclaim (1) were largely the same or substantively identical to the allegations in the prior versions thereof, and any new allegations provided by the defendants were immaterial, (2) did not relate to the making, validity, or enforcement of the note or mortgage, and (3) were legally insufficient. In its order striking the second amended laches defense and the second amended counterclaim in its entirety, the court concluded that the issues raised in the second amended laches defense, the second amended counterclaim, and the February 9, 2016 motion to strike "were previously adjudicated by this court in its memorandum of decision dated December 28, 2015."[11]

On appeal, the defendants, relying on our Supreme Court's decision in *U.S. Bank National Assn.* v. *Blowers*, supra, 332 Conn. 656, claim that the allegations that they pleaded in support of the nonrepleaded counts, their second amended laches defense, and their second amended counterclaim related to the "enforcement" of the note or mortgage. Thus, the defendants contend, the trial court erred in striking those claims and defenses on the ground that they did not relate to the making, validity, or enforcement of the note or mortgage. We agree.

We first observe that, in general, "[a]ppellate review of a trial court's decision to grant a motion to strike is plenary. . . . This is because a motion to strike challenges the legal sufficiency of a pleading . . . and, consequently, requires no factual findings by the trial court . . . . In ruling on a motion to strike, the court must accept as true the facts alleged in the special defenses and construe them in the manner most favorable to sustaining their legal sufficiency. . . . The allegations of the pleading involved are entitled to the same favorable construction a trier would be required to give in admitting evidence under them and if the facts provable under its allegations would support a defense or a cause of action, the motion to strike must fail." (Citations omitted; internal quotation marks omitted.) *U.S. Bank National Assn.* v. *Blowers*, supra, 332 Conn. 667–68. As in *Blowers*, the precise issue before us is whether the allegations set forth by the defendants in support of the nonrepleaded counts, the second amended laches defense, and the second amended counterclaim "bear a sufficient connection to enforcement of the note or mortgage,"[12] which "presents an issue of law over which we also exercise plenary review." Id., 670.

We next provide an overview of our Supreme Court's decision in *Blowers*. In *Blowers*, after the mortgagee had commenced an action to foreclose the mortgage encumbering the mortgagor's real property, the mortgagor filed special defenses sounding in equitable estoppel and unclean hands, and a counterclaim sounding in negligence and violations of CUTPA. Id., 659. In support thereof, the mortgagor alleged that the mortgagee committed various acts, which occurred either after the mortgagor's default on the promissory note or after the mortgagee had commenced the foreclosure action,[13] that, inter alia, frustrated his ability to obtain a proper loan modification and increased the amount of the debt, including attorney's fees and interest, claimed by the mortgagee in the foreclosure action. Id., 661. Additionally, in support of his negligence claim, the mortgagor alleged that the mortgagee's actions had ruined his credit score, which detrimentally affected his business and personal affairs, and caused him to incur significant legal and other expenses. Id. The mortgagor also asserted that the mortgagee should be estopped from collecting the damages that it had caused by its own alleged misconduct and barred from foreclosing the mortgage at issue due to its unclean hands. Id., 661–62. With respect to his counterclaim, he sought compensatory and punitive damages, injunctive relief, and attorney's fees. Id., 662.

The mortgagee moved to strike the mortgagor's special defenses and counterclaim, claiming that they were unrelated to the making, validity, or enforcement of the note and failed to state a claim upon which relief may be granted. Id. The trial court granted the motion to

strike, concluding that the alleged misconduct by the mortgagee had occurred following the execution of the note and, therefore, neither the counterclaim nor the special defenses related to the making, validity, or enforcement thereof. Id., 662–63. Additionally, the court determined that the mortgagor had alleged sufficient facts to support his special defenses, but the court did not reach the issue of whether the counterclaim was supported by adequate facts. Id., 662. Thereafter, the court rendered a judgment of strict foreclosure. Id., 663. The mortgagor appealed to this court, which affirmed the judgment, with one judge dissenting. *U.S. Bank National Assn.* v. *Blowers*, 177 Conn. App. 622, 638, 172 A.3d 837 (2017), rev'd, 332 Conn. 656, 212 A.3d 226 (2019); id., 638–51 (*Prescott, J.*, dissenting).

On certified appeal to our Supreme Court, the mortgagor challenged, inter alia, the propriety of the making, validity, or enforcement test, and, to the extent that the test applied in foreclosure actions, the proper scope of " 'enforcement' " under the test. *U.S. Bank National Assn.* v. *Blowers*, supra, 332 Conn. 664. Our Supreme Court explained that the making, validity, or enforcement test is "nothing more than a practical application of the standard rules of practice that apply to all civil actions to the specific context of foreclosure actions."[14] Id., 667. Having clarified the proper standard, the court agreed with the mortgagor that "a proper construction of 'enforcement' includes allegations of harm resulting from a mortgagee's wrongful postorigination conduct in negotiating loan modifications, when such conduct is alleged to have materially added to the debt and substantially prevented the mortgagor from curing the default." Id.

The court observed that "[a]n action for foreclosure is 'peculiarly an equitable action' "; id., 670; and that "appellate case law recognizes that conduct occurring after the origination of the loan, after default, and even after the initiation of the foreclosure action may form a proper basis for defenses in a foreclosure action." Id., 672. The court determined that "[t]his broader temporal scope is consistent with the principle that, in equitable actions, 'the facts determinative of the rights of the parties are those in existence at the time of final hearing' . . . [and] is not inconsistent with a requirement that a defense sufficiently relates to enforcement of the note or mortgage. The various rights of the mortgagee under the note and mortgage (or related security instruments) are not finally or completely 'enforced' until the foreclosure action is concluded." (Citations omitted.) Id., 673. The court further determined that "[t]he mortgagor's rights and liabilities . . . depend not only on the validity of the note and mortgage but also on the amount of the debt. That debt will determine whether strict foreclosure or foreclosure by sale is ordered, and, in turn, whether a deficiency judgment may be recovered and the amount of that deficiency. . . . The debt may

include principal, interest, taxes, and late charges owed. . . . The terms of the note or mortgage may also permit an award of reasonable attorney's fees for expenses arising from any controversy relating to the note or mortgage . . . ." (Citations omitted.) Id., 674–75.

The court continued: "These equitable and practical considerations inexorably lead to the conclusion that allegations that the mortgagee has engaged in conduct that wrongly and substantially increased the mortgagor's overall indebtedness, caused the mortgagor to incur costs that impeded the mortgagor from curing the default, or reneged upon modifications are the types of misconduct that are directly and inseparably connected . . . to enforcement . . . . Such allegations, therefore, provide a legally sufficient basis for special defenses in the foreclosure action. Insofar as the counterclaims rest, at this stage, upon the same allegations as the special defenses, judicial economy would certainly weigh in favor of their inclusion in the present action."[15] (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 675–76. On the basis of that rationale, the court reversed this court's judgment and remanded the matter to this court with direction to reverse the judgment of strict foreclosure and remand the matter to the trial court for further proceedings. Id., 678.

Applying the rationale of *Blowers* to the present case, we conclude that the trial court erred in striking the nonrepleaded counts, the defendants' second amended laches defense, and the defendants' second amended counterclaim on the ground that they did not satisfy the making, validity, or enforcement test. The defendants raised allegations of postorigination misconduct by the plaintiff that, inter alia, increased their debt and hindered their ability to cure their default. Such alleged misconduct is "directly and inseparably connected to enforcement" of the note or mortgage and, therefore, may form the basis of special defenses and a counterclaim in the present action.

Like our Supreme Court in *Blowers*, we note that we are not deciding whether the defendants' allegations, even if proven, "are sufficient to justify the remedy of withholding foreclosure or reducing the debt. . . . [T]he trial court would have to be mindful that [t]he equitable powers of the court are broad, but they are not without limit. Equitable power must be exercised equitably." (Internal quotation marks omitted.) *U.S. Bank National Assn.* v. *Blowers*, supra, 332 Conn. 676–77. We conclude only that the defendants' allegations relate to enforcement of the note or mortgage and, as a result, the court committed error in striking the nonrepleaded counts, the defendants' second amended laches defense, and the defendants' second amended counterclaim.[16]

The judgments are reversed and the case is remanded

for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.

[1] The complaint also named Gerri N. Russo and Webster Bank, National Association, as defendants, but those parties were defaulted for failure to appear and for failure to plead, respectively, and are not participating in this appeal. For purposes of clarity, we will refer to Leslie I. Nathan as Leslie, Lynne W. Nathan as Lynne, Lynne W. Nathan, Trustee of the Lynne W. Nathan Trust Agreement dated November 19, 2001, as the Lynne Trustee, and to those three parties collectively as the defendants.

[2] The full name of the plaintiff is HSBC Bank USA, National Association, as Trustee for Wells Fargo Asset Securities Corporation Mortgage Pass-Through Certificates Series 2007-8.

[3] In their principal appellate brief, the defendants also claimed that the trial court erred in concluding that the plaintiff had standing to pursue this foreclosure action. More specifically, the defendants asserted that the court erroneously presumed, upon the plaintiff's production of the note demonstrating that it was the valid holder thereof, that the plaintiff was the rightful owner of the debt and shifted the burden to the defendants to rebut that presumption. In their principal reply brief, however, the defendants concede that they cannot prevail on this claim because this court is bound by our Supreme Court's decision in *RMS Residential Properties, LLC* v. *Miller*, 303 Conn. 224, 231–32, 32 A.3d 307 (2011), overruled in part by *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 325 n.18, 71 A.3d 492 (2013), wherein our Supreme Court stated that "a holder of a note is presumed to be the owner of the debt, and unless the presumption is rebutted, may foreclose the mortgage under [General Statutes] § 49-17." The defendants represent that they have raised this claim solely to preserve it for review by our Supreme Court. Accordingly, we need not address the merits of this claim.

[4] In their second amended counterclaim, the defendants pleaded that the default occurred in January, 2010.

[5] The defendants filed an original answer, special defenses, and counterclaim on May 20, 2015.

[6] The court denied the motion to strike as to the defendants' first amended special defense asserting lack of standing.

[7] Prior to oral argument in this matter, this court ordered the parties to be prepared to address whether the portion of the appeal challenging the trial court's striking of the defendants' counterclaim, as amended, was taken from a final judgment where no judgment had been rendered thereon. See Practice Book §§ 10-44 and 61-2; *Pellecchia* v. *Connecticut Light & Power Co.*, 139 Conn. App. 88, 90–91, 54 A.3d 658 (2012), cert. denied, 307 Conn. 950, 60 A.3d 740 (2013); *Homecomings Financial Network, Inc.* v. *Starbala*, 85 Conn. App. 284, 285 n.1, 857 A.2d 366 (2004). On January 17, 2019, after having heard argument from the parties on January 15, 2019, with respect to, inter alia, the final judgment issue, this court issued an order dismissing, for lack of a final judgment, the portion of the appeal challenging the trial court's striking of the counterclaim, as amended. Thereafter, the plaintiff filed with the trial court a motion for judgment on the stricken counterclaim, as amended, which the court, *Frechette, J.*, granted. The defendants then filed an amended appeal to encompass the judgment rendered on the counterclaim, as amended.

[8] This court also ordered the parties to address the claims raised in the defendants' amended appeal. See footnote 7 of this opinion.

[9] Conversely, the defendants waived their right to challenge the court's striking of their first amended laches defense and counts five, six, ten, and twelve of their first amended counterclaim by repleading them. See *Lund* v. *Milford Hospital, Inc.*, 326 Conn. 846, 850, 168 A.3d 479 (2017) ("[A]fter a court has granted a motion to strike, [a party] may either amend his [or her] pleading [pursuant to Practice Book § 10-44] or, on the rendering of judgment, file an appeal. . . . The choices are mutually exclusive [as the] filing of an amended pleading operates as a waiver of the right to claim that there was error in the sustaining of the [motion to strike] the original pleading." [Internal quotation marks omitted.]).

We further observe that "[i]f the [pleading party] elects to replead following the granting of a motion to strike, the [opposing party] may take advantage of this waiver rule by challenging the amended [pleading] as not materially different than the [stricken] . . . pleading that the court had determined to be legally insufficient. That is, the issue [on appeal becomes] whether the court properly determined that the [pleading party] had failed to remedy

the pleading deficiencies that gave rise to the granting of the motions to strike or, in the alternative, set forth an entirely new cause of action. It is proper for a court to dispose of the substance of a [pleading] merely repetitive of one to which a demurrer had earlier been sustained. . . . Furthermore, if the allegations in a [pleading] filed subsequent to one that has been stricken are not materially different than those in the earlier, stricken [pleading], the party bringing the subsequent [pleading] cannot be heard to appeal from the action of the trial court striking the subsequent [pleading]." (Internal quotation marks omitted.) *Sempey* v. *Stamford Hospital*, 194 Conn. App. 505, 512,      A.3d      (2019). The plaintiff does not argue on appeal that the second amended laches defense and the second amended counterclaim were not materially different from the stricken iterations thereof. Therefore, we do not consider that issue. Id., 512 n.4.

[10] On January 12, 2016, in addition to filing their second amended counterclaim and special defenses, the defendants filed a notice of intent to appeal (notice) from the court's December 28, 2015 decision granting, in part, the plaintiff's July 8, 2015 motion to strike. The defendants contend that the notice preserved their appellate rights as to the December 28, 2015 decision. We are not persuaded.

First, the notice did not operate to preserve the defendants' appellate rights. Subsection (b) of Practice Book § 61-5, which governs the filing of notices of intent to appeal, provides in relevant part: "The use of the notice of intent to appeal is abolished in all instances except as provided in subsection (a) of this section, which sets forth the two instances in which a notice of intent must be filed. Except as provided in subsection (a), the filing of a notice of intent to appeal will preserve no appeal rights." Subsection (a) of § 61-5 provides in relevant part that a notice of intent to appeal must be filed in the following two instances only: "(1) [W]hen the deferred appeal is to be filed from a judgment that not only disposes of an entire complaint, counterclaim or cross complaint but also disposes of all the causes of action brought by or against a party or parties so that that party or parties are not parties to any remaining complaint, counterclaim or cross complaint; or (2) when the deferred appeal is to be filed from a judgment that disposes of only part of a complaint, counterclaim, or cross complaint but nevertheless disposes of all causes of action in that pleading brought by or against a particular party or parties." Section 61-5 (a) further provides in relevant part: "In the event that the party aggrieved by a judgment described in (1) or (2) above elects to defer the taking of the appeal until the disposition of the entire case, the aggrieved party must, [within the applicable appeal period], file in the trial court a notice of intent to appeal the judgment . . . ." Here, the December 28, 2015 decision, which itself is not a final judgment; see *Sempey* v. *Stamford Hospital*, 180 Conn. App. 605, 618, 184 A.3d 761 (2018) ("[t]he granting of a motion to strike . . . ordinarily is not a final judgment"); Practice Book § 10-44; and footnote 7 of this opinion; is outside of the ambit of § 61-5 (a). Accordingly, the defendants did not preserve their appellate rights by filing the notice.

Second, the notice did nothing to counteract the defendants' simultaneous express abandonment of their first amended unclean hands defense in their objection. In the notice, the defendants represented in relevant part that they were "exercis[ing] their option to appeal from the [December 28, 2015 decision when] a final judgment is rendered which disposes of the cause of action for all purposes." The defendants made no representations in the notice contradicting their explicit abandonment of the first amended unclean hands defense.

[11] In their briefs, the parties interpret this decision as the court concluding that the allegations set forth in support of the second amended laches defense and the second amended counterclaim did not relate to the making, validity, or enforcement of the note or mortgage. We do as well.

[12] We do not address whether all of the allegations that the defendants set forth in support of their claims and defenses have a sufficient nexus to enforcement of the note or mortgage. The parties and the trial court have generally addressed the allegations in toto, as will we. See *U.S. Bank National Assn.* v. *Blowers*, supra, 332 Conn. 676.

[13] The mortgagor alleged, inter alia, that the mortgagee had (1) offered rate reductions lowering the mortgagor's monthly mortgage payments, only to later renege on the modifications following the mortgagor's successful completion of trial payment periods, (2) increased the mortgagor's monthly payment amount of modified payments that had been agreed to following the intervention of the state's Department of Banking, (3) erroneously informed the mortgagor's insurance company that the mortgagor's real prop-

erty was no longer being used as the mortgagor's residence, resulting in the cancelation of the mortgagor's insurance policy and requiring the mortgagor to replace the coverage at higher premium costs, and (4) engaged in dilatory conduct during the course of approximately ten months of mediation sessions held after the commencement of the foreclosure action. *U.S. Bank National Assn.* v. *Blowers*, supra, 332 Conn. 659–61.

[14] In their principal appellate brief in this appeal, the defendants claim that the pleading standards set forth in Practice Book §§ 10-10 (concerning counterclaims) and 10-50 (concerning special defenses) that apply in other civil actions should also be applicable in foreclosure actions in lieu of the making, validity, or enforcement test. As our Supreme Court established in *Blowers*, the making, validity, or enforcement test is not a separate pleading standard, but rather a "practical application" of the existing pleading standards set forth in our rules of practice. *U.S. Bank National Assn.* v. *Blowers*, supra, 332 Conn. 667.

[15] In striking the mortgagor's special defenses and counterclaim, the trial court also "acknowledged that a foreclosure sought after a modification had been reached during mediation could have the requisite nexus to enforcement of the note, but found that there had been no such modification . . . ." *U.S. Bank National Assn.* v. *Blowers*, supra, 332 Conn. 662. On appeal, the mortgagor also challenged "the sufficiency of the allegations to establish that the parties had entered into a binding modification if such allegations are necessary to seek equitable relief on the basis of postorigination conduct." Id., 664. Our Supreme Court determined that "[t]o the extent that the pleadings reasonably may be construed to allege that the April, 2012 intervention by the Department of Banking resulted in a binding modification, there can be no doubt that the breach of such an agreement would bear the requisite nexus [to enforcement of the note or mortgage]." Id., 675.

[16] In its principal and supplemental appellate briefs, the plaintiff, as an alternative ground for affirmance, asserts that the nonrepleaded counts, the defendants' second amended laches defense, and the defendants' second amended counterclaim fail to state legally cognizable claims or defenses. Although the plaintiff raised that argument in each of its motions to strike, the trial court did not address it in its decisions adjudicating the motions. The defendants argue that the trial court should adjudicate that issue in the first instance and that, pursuant to Practice Book § 10-44, they are entitled to an opportunity to replead if the trial court, upon motion by the plaintiff, strikes their claims or defenses as otherwise legally insufficient. We agree with the defendants. Accordingly, we do not address the plaintiff's claim and leave it to the trial court to decide should the plaintiff choose to reassert it.

---