******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# U.S. BANK NATIONAL ASSOCIATION, TRUSTEE *v.*
# ROBIN BLOWERS ET AL.
## (AC 39219)

Alvord, Prescott and Pellegrino, Js.

*Syllabus*

The plaintiff bank, as trustee, sought to foreclose a mortgage on certain real property owned by the defendants P and B. Following the defendants default on their mortgage payments, the plaintiff, through its loan servicing agent, initiated loan modification negotiations with the defendants, but the parties were unable to agree on a binding modification. Thereafter, the plaintiff commenced a foreclosure action, and the parties subsequently participated in a foreclosure mediation program but were unable to reach an agreement. The defendants then filed an answer, special defenses and counterclaims, claiming, inter alia, that during the foreclosure mediation and loan modification negotiations, the plaintiff hindered their ability to obtain a binding loan modification, thereby unnecessarily increasing the amount that the plaintiff sought to recover from the defendants, and that the plaintiff and its loan servicer failed to conduct themselves in a manner that was fair, equitable and honest. In response, the plaintiff filed a motion to strike the defendants' special defenses and counterclaims, which the trial court granted. Thereafter, the trial court rendered a judgment of strict foreclosure, and P appealed to this court. *Held*:

1. P could not prevail on his claim that the trial court improperly granted the plaintiff's motion to strike the defendants' special defenses and counterclaims:

   a. The trial court properly determined that the special defenses did not relate to the making, validity or enforcement of the subject note and mortgage; all of the alleged improper conduct giving rise to the special defenses took place during foreclosure mediation or the loan modification negotiations and no binding modification was agreed on by the parties, and contrary to P's assertion that the transaction test set forth in the applicable rule of practice (§ 10-10) applied to the special defenses, that rule, which, in a foreclosure action, requires consideration of whether a counterclaim has some reasonable nexus to the making, validity or enforcement of the note or mortgage, does not mention special defenses and applying it to them would be unnecessary and duplicitous because the purpose of the rule is to permit the joinder of closely related claims and special defenses, which, by their nature, must be tried with the corresponding complaint.

   b. The allegations in the defendants' counterclaims were insufficient to establish that the counterclaims had a reasonable nexus to the making, validity or enforcement of the note or mortgage pursuant to the transaction test; the allegations of the counterclaims related solely to the plaintiff's conduct during the foreclosure mediation and the loan modification negotiations, which did not demonstrate a sufficient nexus to the making, validity or enforcement of the note or mortgage.

2. This court declined P's request to diverge from well established legal precedent and to adopt a transaction test in foreclosure actions that does not include the requirement that special defenses and counterclaims have a reasonable nexus to, or relate to, the making, validity or enforcement of the note or mortgage; contrary to P's contention that the requirement is opposed to fundamental principles of equity jurisprudence, the requirement permits equitable considerations when justice requires while simultaneously serving to promote judicial economy through the swift and uncomplicated resolution of foreclosure proceedings, and adopting the transaction test requested by P would lead to an increase of special defenses and counterclaims in foreclosure actions that would unnecessarily convolute and delay the foreclosure process and would deter mortgagees from participating in mediation and loan modification negotiations.

3. P could not prevail on his claim that, even if the making, validity or enforcement requirement applied to counterclaims and special defenses,

the trial court erred by improperly limiting the scope of the term enforcement; that court did not err in its interpretation of the term enforcement, as the alleged conduct of the plaintiff did not relate to the enforcement of the note or mortgage because it occurred during the foreclosure mediation and loan modification negotiations, and no binding loan modification was reached between the parties that rendered the original note and mortgage unenforceable.

4. P's claim that the trial court made factual errors when assessing the plaintiff's motion to strike was unavailing; even if this court accepted all of the allegations as true and viewed them in the light most favorable to sustaining their legal sufficiency, the defendants failed to allege that the parties agreed to a binding modification that affected the making, validity or enforcement of the original note or mortgage, and, therefore, the trial court did not err in finding that no binding loan modification existed between the parties.

(*One judge dissenting*)

Argued May 16—officially released October 31, 2017

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the named defendant et al., brought to the Superior Court in the judicial district of Hartford, where the defendant Farmington Valley Landscape, LLC, et al. were defaulted for failure to appear; thereafter, the defendant C&I Solutions, LLC, was defaulted for failure to plead; subsequently, the named defendant et al. filed counterclaims; thereafter, the named defendant et al. withdrew the counterclaims in part; subsequently, the court, *Dubay, J.*, granted the plaintiff's motion to strike the special defenses and counterclaims; thereafter, the court, *Wahla, J.*, granted the plaintiff's motion for judgment on the counterclaims; subsequently, the court, *Peck, J.*, granted the plaintiff's motion for summary judgment as to liability; thereafter, the court, *Wahla, J.*, granted the plaintiff's motion for a judgment of strict foreclosure and rendered judgment thereon, from which the defendant Mitchell Piper appealed to this court. *Affirmed.*

*P. Solange Hilfinger-Pardo*, certified legal intern, with whom were *Jeffrey Gentes* and, on the brief, *Anderson Tuggle*, *Noah Kolbi-Molinas* and *Emily Wanger*, certified legal interns, for the appellant (defendant Mitchell Piper).

*Pierre-Yves Kolakowski*, with whom, on the brief, was *Zachary Bennett Grendi*, for the appellee (plaintiff).

*Opinion*

PELLEGRINO, J. In this mortgage foreclosure action, the defendant Mitchell Piper,[1] appeals from the judgment of strict foreclosure rendered by the trial court in favor of the plaintiff, U.S. Bank National Association, as Trustee for the Holders of the First Franklin Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2005-FF10. On appeal, Piper claims that the court improperly granted the plaintiff's motion to strike the defendants' special defenses and counterclaims. Specifically, he contends that the court improperly required the special defenses to directly relate to and the counterclaims to have a sufficient nexus to the making, validity, or enforcement of the note and mortgage. Instead, Piper argues, the court should have applied a "straightforward version of the transaction test with allowances for equitable considerations" to both the special defenses and counterclaims. Additionally, Piper claims that even if the court did not err in applying the making, validity, or enforcement requirement, the counterclaims and special defenses should have survived a motion to strike under a broad reading of the term "enforcement." Finally, Piper claims that the court erred in its determinations that no binding modification to the defendants' loan existed, that, if such modification existed, the defendants defaulted on the loan, and that all of the plaintiff's alleged misconduct took place during foreclosure mediation. We disagree with Piper contentions and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The defendants executed a promissory note, dated August 2, 2005, in which they promised to pay First Franklin division of National City Bank of Indiana the principal sum of $488,000. To secure the note, the defendants mortgaged their interest in their property located at 129 Stagecoach Road in Avon. The mortgage was assigned to the plaintiff on September 1, 2005.

In February, 2014, the plaintiff commenced this action to foreclose the mortgage on the subject property. In its complaint, the plaintiff alleged that the defendants defaulted under the terms of their note and mortgage, that the plaintiff exercised its option to declare the entirety of the balance due, and that, despite due demand, the defendants failed to pay the balances due and owing. The parties subsequently participated in a foreclosure mediation program but were unable to reach an agreement. On April 17, 2015, the defendants filed an answer, three special defenses and three counterclaims. The counterclaims sounded in negligence; violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.; and unjust enrichment. The special defenses sounded in equitable estoppel, unjust enrichment, and unclean hands. On July 17, 2015, the plaintiff filed a motion to strike the

defendants' special defenses and counterclaims, which was granted by the court on December 28, 2015. Thereafter, the court rendered a judgment of strict foreclosure. This appeal followed. Additional facts will be set forth as necessary.

"Our standard of review is undisputed. Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling on [a motion to strike] is plenary. . . . A party wanting to contest the legal sufficiency of a special defense [or counterclaim] may do so by filing a motion to strike. The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. . . . In ruling on a motion to strike, the court must accept as true the facts alleged in the special defenses and construe them in the manner most favorable to sustaining their legal sufficiency." (Citations omitted; internal quotation marks omitted.) *Brasso* v. *Rear Still Hill Road, LLC*, 64 Conn. App. 9, 12–13, 779 A.2d 198 (2001).

I

We first address Piper's claim that the court improperly struck the defendants' special defenses, namely, equitable estoppel and unclean hands.[2] Piper contends that the court failed to apply properly the transaction test when reviewing the special defenses. Instead, he argues, the court improperly narrowed the transaction test by requiring the defendants' special defenses to relate to the making, validity, or enforcement of the note or mortgage.

The following additional facts are relevant to this claim. Shortly after the defendants defaulted on their mortgage payments in January, 2010, a servicing agent for the plaintiff reached out to the defendants offering a "rate reduction." After the defendants successfully completed a three month trial modification period, however, the plaintiff withdrew its offer to modify the loan. The plaintiff continued to offer loan modifications, but no offers resulted in a final, binding modification to the defendants' mortgage. Following the defendants' failure to cure the debt, the plaintiff commenced this foreclosure action.

In their answer, special defenses, and counterclaims filed on April 17, 2015, the defendants claimed, in relevant part, that throughout the foreclosure mediation and loan modification negotiation period, the plaintiff hindered their ability to obtain a proper loan modification. As a result, the defendants claimed, the amount that the plaintiff sought to recover from them in connection with the foreclosure action unnecessarily increased. Additionally, the defendants claimed that the plaintiff and its servicing agent failed to conduct them-

selves in a manner that was fair, equitable, and honest during the mediation and loan modification negotiation period.

We begin by setting forth the relevant legal principles. "In addition to challenging the legal sufficiency of a complaint or counterclaim, our rules of practice provide that a party may challenge by way of a motion to strike the legal sufficiency of an answer, including any special defenses contained therein . . . ." (Internal quotation marks omitted.) *GMAC Mortgage, LLC* v. *Ford*, 144 Conn. App. 165, 179–80, 73 A.3d 742 (2013). "The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action." (Internal quotation marks omitted.) *TD Bank, N.A.* v. *M.J. Holdings, LLC*, 143 Conn. App. 322, 326, 71 A.3d 541 (2013). "A motion to strike does not admit legal conclusions. . . . Conclusions of law, absent sufficient alleged facts to support them, are subject to a motion to strike. The trial court may not seek beyond the complaint for facts not alleged, or necessarily implied . . . ." (Citations omitted.) *Fortini* v. *New England Log Homes, Inc.*, 4 Conn. App. 132, 134–35, 492 A.2d 545, cert. dismissed, 197 Conn. 801, 495 A.2d 280 (1985).

"Historically, defenses to a foreclosure action have been limited to payment, discharge, release or satisfaction . . . or, if there had never been a valid lien. . . . A valid special defense at law to a foreclosure proceeding must be legally sufficient and address the making, validity or enforcement of the mortgage, the note, or both. . . . Where the plaintiff's conduct is inequitable, a court may withhold foreclosure on equitable considerations and principles. . . . [O]ur courts have permitted several equitable defenses to a foreclosure action. [I]f the mortgagor is prevented by accident, mistake or fraud, from fulfilling a condition of the mortgage, foreclosure cannot be had . . . . Other equitable defenses that our Supreme Court has recognized in foreclosure actions include unconscionability . . . abandonment of security . . . and usury." (Citation omitted; internal quotation marks omitted.) *LaSalle National Bank* v. *Freshfield Meadows, LLC*, 69 Conn. App. 824, 833–34, 798 A.2d 445 (2002).

In the present case, neither of the defendants' special defenses at issue directly attacks the making, validity, or enforcement of the note or mortgage. See *CitiMortgage, Inc.* v. *Rey*, 150 Conn. App. 595, 603, 92 A.3d 278, cert. denied, 314 Conn. 905, 99 A.3d 635 (2014). All events giving rise to the special defenses took place during the loan modification negotiation period or during foreclosure mediation. This court previously has held that alleged improper conduct occurring during mediation and modification negotiations lacked "any reasonable nexus to the making, validity or enforcement of the

mortgage or note . . . ." *U.S. Bank National Assn.* v. *Sorrentino*, 158 Conn. App. 84, 97, 118 A.3d 607, cert. denied, 319 Conn. 951, 125 A.3d 530 (2015). By contrast, if the modification negotiations ultimately result in a final, binding, loan modification, and the mortgagee subsequently breaches the terms of that new modification, then any special defenses asserted by the mortgagor in regard to that breach would relate to the enforcement of the mortgage. In the present case, however, no binding modification was ever agreed upon by the parties. Accordingly, the special defenses raised by the defendants do not relate to the making, validity, or enforcement of the note or mortgage.

Piper attempts to circumvent the fact that the defendants' special defenses do not relate to the making, validity, or enforcement of the note or mortgage by arguing that the broader transaction test set forth in Practice Book § 10-10 applies to their special defenses. Section 10-10 provides, in relevant part, that "[i]n any action for legal or equitable relief, any defendant may file counterclaims against any plaintiff . . . provided that each such counterclaim . . . arises out of the transaction or one of the transactions which is the subject of the plaintiff's complaint . . . ." This section is "a common-sense rule designed to permit the joinder of closely related claims where such joinder is in the best interests of judicial economy." (Internal quotation marks omitted.) *JP Morgan Chase Bank, Trustee* v. *Rodrigues*, 109 Conn. App. 125, 131, 952 A.2d 56 (2008). Section 10-10 makes no mention of special defenses and explicitly states that it applies to counterclaims. Further, because the purpose of the rule is to permit the joinder of closely related claims that meet the transaction test, this purpose could not possibly be furthered when the rule is applied to special defenses. "The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action." (Internal quotation marks omitted.) *Fidelity Bank* v. *Krenisky*, 72 Conn. App. 700, 705, 807 A.2d 968, cert. denied, 262 Conn. 915, 811 A.2d 1291 (2002). Special defenses, by their very nature, must be tried with the corresponding complaint, so the transaction test set forth in § 10-10 would be unnecessary and duplicitous as applied to special defenses. Accordingly, the transaction test does not apply, and the court properly granted the motion to strike the defendants' special defenses.

II

We next address Piper's claim that the trial court improperly struck the defendants' counterclaims by requiring the counterclaims to have a sufficient nexus to the making, validity, or enforcement of the note or mortgage.

"A plaintiff can [move to strike] a . . . counter-

claim." *Nowak* v. *Nowak*, 175 Conn. 112, 116, 394 A.2d 716 (1978). "A counterclaim has been defined as a cause of action existing in favor of a defendant against a plaintiff [that] a defendant pleads to diminish, defeat or otherwise affect a plaintiff's claim and also allows a recovery by the defendant. . . . In other words, a counterclaim is a cause of action . . . on which the defendant might have secured affirmative relief had he sued the plaintiff in a separate action." (Citation omitted; internal quotation marks omitted.) *Historic District Commission* v. *Sciame*, 152 Conn. App. 161, 176, 99 A.3d 207, cert. denied, 314 Conn. 933, 102 A.3d 84 (2014).

"[T]his court [has] clarified that a proper application of Practice Book § 10-10 in a foreclosure context requires consideration of whether a counterclaim has some reasonable nexus to, rather than directly attacks, the making, validity or enforcement of the mortgage or note." *U.S. Bank National Assn.* v. *Sorrentino*, supra, 158 Conn. App. 96. "[R]elevant considerations in determining whether the transaction test has been met include whether the same issues of fact and law are presented by the complaint and the [counter]claim and whether separate trials on each of the respective claims would involve a substantial duplication of effort by the parties and the courts." (Internal quotation marks omitted.) *CitiMortgage, Inc.* v. *Rey*, supra, 150 Conn. App. 606.

In the present case, the defendants failed to assert factual allegations underlying their counterclaims that had a reasonable nexus to the making, validity, or enforcement of the note or mortgage. The defendants' counterclaims, like their special defenses discussed previously in part I of this opinion, were based upon similar factual allegations derived solely from the plaintiff's conduct during postdefault mediation and loan modification negotiations.[3] Because the defendants failed to show how this conduct had a sufficient nexus to the making, validity, or enforcement of the note or mortgage, the court properly struck the counterclaims pursuant to Practice Book § 10-10.

### III

Piper nonetheless hopes to prevail on his claims on appeal by asking this court to diverge from decades of legal precedent and to abolish the requirement that counterclaims and special defenses have a sufficient nexus to, or relate to, the making, validity, or enforcement of the note or mortgage, in favor of a "straightforward version of the transaction test." He argues that the current legal standard for counterclaims and special defenses in foreclosure proceedings "stands opposed to . . . fundamental principles of equity jurisprudence." We do not agree with Piper's contention and decline to abandon the current standard.[4]

Piper attempts to characterize the court's application of the making, validity, or enforcement requirement as a rigid barrier to the assertion of viable special defenses and counterclaims. His claim, however, overlooks the fact that equitable considerations may be taken into account in foreclosure proceedings.

On the contrary, our courts have allowed exceptions to the making, validity, or enforcement requirement where traditional notions of equity would not be served by its strict application. For example, in *Thompson* v. *Orcutt*, 257 Conn. 301, 777 A.2d 670 (2001), our Supreme Court reversed this court's determination that a special defense of unclean hands did not apply where the plaintiff's fraudulent conduct occurred in a separate bankruptcy proceeding that was not strictly related to the making, validity, or enforcement of the note or mortgage. In reversing this court's decision, the Supreme Court observed that the plaintiff would not have had the legal authority to bring the foreclosure action against the defendants but for its fraudulent conduct during the bankruptcy proceeding. Id., 313–14. The court noted, "[b]ecause the doctrine of unclean hands exists to safeguard the integrity of the court . . . [w]here a plaintiff's claim grows out of or depends upon or is inseparably connected with his own prior fraud, a court of equity will, in general, deny him any relief, and will leave him to whatever remedies and defenses at law he may have." (Citations omitted; internal quotation marks omitted.) Id., 310.

Piper's contention in the present case that the making, validity, or enforcement requirement "stands opposed to . . . fundamental principles of equity jurisprudence," therefore, is misguided. The requirement serves to promote judicial economy through the swift and uncomplicated resolution of foreclosure proceedings while simultaneously allowing for equitable considerations when justice so requires. If we were to dispose of the requirement and adopt the defendants' "straightforward" transaction test, it would lead to a flood of counterclaims and special defenses in foreclosure cases that would unnecessarily convolute and delay the foreclosure process. Further, automatically allowing counterclaims and special defenses in foreclosure actions that are based on conduct of the mortgagee arising during mediation and loan modification negotiations would serve to deter mortgagees from participating in these crucial mitigating processes. Accordingly, we decline Piper's invitation to depart from the subject making, validity, or enforcement requirement for counterclaims and special defenses in the foreclosure context.[5]

IV

Piper next claims that, even if this court were to determine that the making, validity, or enforcement

requirement applies to the defendants' counterclaims and special defenses, the trial court erred by improperly limiting the scope of the term "enforcement." Specifically, he contends that under a proper reading of the term "enforcement," conduct that occurred during the loan modification negotiation process and foreclosure mediation can meet the making, validity, or enforcement requirement even where no binding modification was reached. We do not agree with his interpretation of the term "enforcement."

As discussed in parts I and II of this opinion, our courts have determined that conduct occurring during loan modification negotiations and foreclosure mediation does not give rise to a valid counterclaim or special defense in a foreclosure action unless such conduct affects the making, validity, or enforcement of the original note or mortgage. See *U.S. Bank National Assn.* v. *Sorrentino*, supra, 158 Conn. App. 97.[6] In the present case, the plaintiff's alleged conduct does not relate to the enforcement of the note or mortgage because no binding modification was reached between the parties that rendered the original note and mortgage unenforceable. Accordingly, the trial court did not err in its interpretation of the term "enforcement," and the defendants' counterclaims and special defenses were properly stricken.

V

Finally, Piper claims that the trial court made factual errors when assessing the plaintiff's motion to strike, and that these errors amounted to an abuse of discretion.[7] Specifically, he asserts that the court erred in finding that (1) no binding loan modification existed between the parties, (2) if a modification did exist, the defendants defaulted on it, and (3) all of the plaintiff's alleged misconduct took place during the foreclosure mediation. Further, Piper argues that because the court relied on these factual findings in granting the plaintiff's motion to strike the defendants' special defenses and counterclaims, the alleged factual errors constitute an abuse of discretion. We are not persuaded.

A motion to strike requires no factual findings by the trial court. *Larobina* v. *McDonald*, 274 Conn. 394, 400, 876 A.2d 522 (2005). "We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." *Kumah* v. *Brown*, 127 Conn. App. 254, 259, 14 A.3d 1012, aff'd, 307 Conn. 620, 58 A.3d 247 (2011).

In the present case, the court was not required to make factual determinations, and, therefore, our review of this claim is plenary. See *Brasso* v. *Rear Still Hill Road, LLC*, supra, 64 Conn. App. 12. Accordingly, we

look to the allegations of the defendants' pleadings, construed in the manner most favorable to sustaining their legal sufficiency, to determine if the allegations are legally sufficient counterclaims or special defenses. Id., 13.

The defendants' answer, special defenses, and counterclaims filed on April 17, 2015, alleged that "[i]n April, 2012, [the] defendants contacted the state banking commission, which intervened on [the] defendants' behalf, resulting in an immediate modification being received." Piper argues that the court improperly construed this allegation as failing to establish that a binding loan modification occurred between the parties. As a result, he argues, the court improperly determined that the defendants' allegations failed to meet the making, validity, or enforcement requirement. The defendants, however, never alleged that a binding modification existed between the parties. Instead, they merely alleged that the banking commission "intervened" on their behalf, resulting in an "immediate modification *being received.*" (Emphasis added.) Nowhere do the defendants allege that the parties agreed to this modification and therefore that it was final and binding on them. Even if this court were to accept all of the allegations as true and viewing them in the light most favorable to sustaining their legal sufficiency, the defendants failed to properly allege that there was a binding modification to their loan that affected the making, validity, or enforcement of the original note or mortgage.

In regard to Piper's remaining contentions, namely, (1) the court's reference to the defendants' default on any modification if such modification existed, and (2) the court's statement that all of the defendants' allegations against the plaintiff were based on facts occurring during foreclosure mediation, we do not agree that there was any error. The court made these references in dicta, and, accordingly, the references did not affect the court's ultimate determination to grant the plaintiff's motion to strike. On the basis of our plenary review of the pleadings, we conclude that the trial court properly granted the plaintiff's motion to strike.

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion ALVORD, J., concurred.

[1] Robin Blowers, Farmington Valley Landscape, LLC, Land Rover Capital Group, C&I Solutions, LLC, and Viking Fuel Oil Company, Inc., also were named as defendants but are not parties to this appeal. For convenience, we refer in this opinion to Piper and Blowers as the defendants and individually by name where appropriate.

[2] The defendants withdrew their unjust enrichment special defense and counterclaim on September 16, 2015.

[3] The counterclaims asserted by the defendants include negligence and a violation of CUTPA. In support of their negligence claim, the defendants alleged that the plaintiff: (1) erroneously informed the defendants' insurance company of false information resulting in a cancellation of their insurance policy, (2) arrived late to mediation sessions, (3) provided conflicting information to the defendants during mediation, and (4) took years to evaluate the defendants' request for a loan modification due to the plaintiff's duplica-

tive and changing requests for information.

In support of their CUTPA claim, the defendants alleged that the plaintiff: (1) repeatedly requested duplicative and unnecessary documentation updates during modification negotiations, (2) communicated false information to the defendants' insurance carrier, and (3) made material misrepresentations to the defendants throughout the loan modification negotiation process.

[4] Further, we do not have the power to change existing precedent set by our Supreme Court and by other panels of this court. "As an intermediate court of appeal, we are unable to overrule, reevaluate, or reexamine controlling precedent of our Supreme Court." (Internal quotation marks omitted.) *State* v. *Fuller*, 158 Conn. App. 378, 387 n.6, 119 A.3d 589 (2015). Moreover, "it is axiomatic that one panel of this court cannot overrule the precedent established by a previous panel's holding." *Samuel* v. *Hartford*, 154 Conn. App. 138, 144, 105 A.3d 333 (2014).

[5] We note that mortgagors are not without a remedy for the alleged reprehensible postdefault conduct of mortgagees. Aside from the ability of a trial court in a foreclosure action to deny a mortgagee the relief sought on equitable grounds; see *Thompson* v. *Orcutt*, supra, 257 Conn. 310; a mortgagor is not precluded from bringing a separate action for damages caused by such conduct.

[6] For example, in *EMC Mortgage Corp.* v. *Shamber*, Superior Court, judicial district of Tolland, Docket No. CV-07-5001252-S (November 12, 2009), the court struck the defense of breach of the implied covenant of good faith and fair dealing where the alleged breach occurred as a result of a postdefault "repayment agreement." The court reasoned that the defense was legally insufficient because the defendants failed to allege that the repayment agreement modified the provisions of the note or mortgage or that it rendered them invalid or unenforceable. .

[7] We note that discretion plays no part in the granting or denial of a motion to strike. A motion to strike presents the court solely with a question of law over which our review is plenary. See *Melanson* v. *West Hartford*, 61 Conn. App. 683, 687, 767 A.2d 764, cert. denied, 256 Conn. 904, 772 A.2d 595 (2001).

—————————————————————