******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

WELLS FARGO BANK, N.A., TRUSTEE *v.*
MICHAEL JOHN MELAHN ET AL.
(AC 39426)

Bright, Moll and Bear, Js.

*Syllabus*

The plaintiff bank sought to foreclose a mortgage on certain real property
of the defendant M, who filed a second amended answer with special
defenses and an eight count counterclaim. The counterclaim included
claims for, inter alia, violations of the Connecticut Unfair Trade Practices
Act (CUTPA) (§ 42-110a et seq.). Thereafter, the plaintiff filed a motion
to strike M's special defenses and all eight counts of the counterclaim,
which the trial court granted on the grounds of legal insufficiency and
that seven of the counterclaims did not relate to the making, validity,
or enforcement of the note and mortgage, and, therefore, failed the
transaction test. Subsequently, the trial court rendered judgment on the
counterclaim in favor of the plaintiff, from which M appealed to this
court, which dismissed the appeal in part and affirmed in part. The
plaintiff, on the granting of certification, appealed to our Supreme Court,
which vacated the judgment of this court and remanded the case to this
court with direction to reconsider in light of its decision in *U.S. Bank
National Assn.* v. *Blowers* (332 Conn. 656). *Held*:
1. This court dismissed M's appeal from the trial court's striking of the
second amended special defenses because that portion of his appeal
was not taken from a final judgment.
2. The trial court did not err in striking M's second amended counterclaim
and rendering judgment thereon in favor of the plaintiff: at oral argument
before this court, M abandoned any claim regarding the trial court's
rulings as to the counts of his second amended counterclaim sounding
in negligent and intentional misrepresentation, fraud and breach of con-
tract/breach of the implied contract of good faith and fair dealing; more-
over, the court properly determined that the defendant failed to allege
sufficient facts to demonstrate CUTPA violations and did not rely on
the making, validity or enforcement test in striking the counts of that
counterclaim alleging deceptive acts and practices in violation of
CUTPA, wanton and reckless violation of M's rights in misrepresenta-
tions and omissions made during loan negotiations, and unfair trade
practices, and a claim for punitive damages, thus, *Blowers* was not
germane to the issue of whether the trial court erred; furthermore, M's
allegations that the plaintiff violated the uniform foreclosure standing
orders, inter alia, by failing to send him notice of the foreclosure judg-
ment within ten days following the entry thereof did not sufficiently
relate to the enforcement of the note or mortgage because the alleged
conduct occurred after the foreclosure judgment had been rendered
and thus did not arise out of the same transaction as the plaintiff's
foreclosure complaint.

Argued January 21—officially released June 16, 2020

*Procedural History*

Action to foreclose a mortgage on certain of the
named defendant's real property, and for other relief,
brought to the Superior Court in the judicial district of
Danbury, where the named defendant was defaulted
for failure to appear; thereafter, the court, *Pavia, J.*,
granted the plaintiff's motion for judgment of strict
foreclosure and rendered judgment thereon; subse-
quently, the court, *Pavia, J.*, opened the judgment and
granted the motion to dismiss filed by the named defen-
dant; thereafter, the court, *Pavia, J.*, granted the plain-
tiff's motion to reargue and vacated its order of dis-

missal, and the named defendant appealed to this court, *Gruendel*, *Bear* and *Flynn*, *Js.*, which reversed the trial court's judgment and remanded the matter for further proceedings; subsequently, the named defendant filed amended special defenses and a counterclaim; thereafter, the court, *Russo*, *J.*, granted the plaintiff's motion to strike the amended special defenses and counterclaim and rendered judgment on the counterclaim for the plaintiff, from which the named defendant appealed to this court, *Sheldon*, *Bright* and *Bear*, *Js.*, which dismissed the appeal in part and affirmed the trial court's judgment in part, and the named defendant, on the granting of certification, appealed to our Supreme Court, which vacated the judgment of this court and remanded the case to this court with direction to reconsider. *Appeal dismissed in part; affirmed in part.*

*Ridgely Whitmore Brown*, for the appellant (named defendant).

*Marissa I. Delinks*, for the appellee (plaintiff).

*Opinion*

MOLL, J. This foreclosure case returns to this court on remand from our Supreme Court. See *Wells Fargo Bank, N.A.* v. *Melahn*, 333 Conn. 923, 218 A.3d 67 (2019). The defendant Michael John Melahn[1] appeals from the judgment of the trial court rendered in favor of the plaintiff, Wells Fargo Bank, N.A., as trustee,[2] on the defendant's stricken second amended counterclaim and the court's striking of the defendant's second amended special defenses. In *Wells Fargo Bank, N.A.* v. *Melahn*, 181 Conn. App. 607, 614, 186 A.3d 1215 (2018), rev'd, 333 Conn. 923, 218 A.3d 67 (2019), this court dismissed, for lack of a final judgment, the portion of the defendant's appeal taken from the striking of his second amended special defenses and affirmed the judgment in all other respects. Thereafter, the defendant petitioned our Supreme Court for certification to appeal. Our Supreme Court granted the defendant's petition, vacated this court's judgment, and remanded the case to this court with direction to reconsider its judgment in light of our Supreme Court's decision in *U.S. Bank National Assn.* v. *Blowers*, 332 Conn. 656, 212 A.3d 226 (2019). *Wells Fargo Bank, N.A.* v. *Melahn*, supra, 333 Conn. 923. On remand, we conclude that *Blowers* does not require a different disposition of the appeal. Accordingly, we dismiss, for lack of a final judgment, the appeal as to the striking of the defendant's second amended special defenses, and we affirm the judgment in all other respects.

The following facts and procedural history, as set forth by this court in two prior opinions, are relevant to our resolution of this appeal. "On September 9, 2010, the plaintiff filed an action against the defendant to foreclose a mortgage on certain of his real property. The defendant was defaulted for failure to appear on November 2, 2010. The court rendered a judgment of strict foreclosure on November 22, 2010, with a law day of January 11, 2011. As part of its judgment, the court ordered the plaintiff to 'send notice to nonappearing individual defendants by regular and certified mail in accordance with the standing orders.' Paragraph D of the uniform foreclosure standing orders, form JD-CV-104, provides: 'Within 10 days following the entry of judgment of strict foreclosure the plaintiff must send a letter by certified mail, return receipt requested, and by regular mail, to all non-appearing defendant owners of the equity and a copy of the notice must be sent to the clerk's office. The letter must contain the following information: a.) the letter is being sent by order of the Superior Court; b.) the terms of the judgment of strict foreclosure; c.) non-appearing defendant owner(s) of equity risk the loss of the property if they fail to take steps to protect their interest in the property on or before the defendant owners' law day; d.) non-appearing defendant owner(s) should either file an indi-

vidual appearance or have counsel file an appearance in order to protect their interest in the equity. The plaintiff must file the return receipt with the Court. The Plaintiff Must Not File A Certificate Of Foreclosure On The Land Records Before Proof Of Mailing Has Been Filed With The Court.' On November 23, 2010, the court sent notice of the order and judgment to the plaintiff. The plaintiff, however, did not send notice to the defendant until January 7, 2011, four days before his law day, and the certified notice was not delivered to him until January 11, 2011, the actual law day. The notice sent to the then nonappearing defendant also did not contain the important information required by the standing orders, which the court had mandated in its judgment. Despite this deficiency, the plaintiff nevertheless certified to the court that notice had been mailed 'in compliance with Uniform Foreclosure Standing Order JD-CV-79 and JD-CV-104 (d), on January 7, 2011, to all counsel and pro se parties of record to this action . . . .' (Emphasis omitted.)

"On February 22, 2011, after the defendant secured legal representation, his attorney filed an appearance in the case, and, on March 31, 2011, he filed a motion to dismiss the foreclosure action due to the plaintiff's noncompliance with the court's judgment and the false certification. The plaintiff opposed the motion. On July 14, 2011, the court opened the judgment of strict foreclosure and granted the defendant's motion to dismiss, holding that because the plaintiff had 'failed to comply with the notice requirement of the standing orders, the matter is dismissed as to [the defendant]. . . .' On August 24, 2011, the plaintiff filed a motion to reargue, citing the case of *Falls Mill of Vernon Condominium Assn., Inc.* v. *Sudsbury*, 128 Conn. App. 314, 320–21, 15 A.3d 1210 (2011). The defendant objected to the plaintiff's motion and argued that the dismissal was a proper sanction for the plaintiff's failure to adhere to the order contained in the court's judgment and that it filed a false certification. The court granted the plaintiff's motion and concluded that, despite the plaintiff's failure to adhere to the notice requirements contained in the judgment of strict foreclosure, the court was precluded from opening the judgment and dismissing the action because the law day had passed and title had become absolute in the plaintiff. The court therefore vacated its order granting the defendant's motion to dismiss and then denied the defendant's motion." (Footnotes omitted.) *Wells Fargo Bank, N.A.* v. *Melahn*, 148 Conn. App. 1, 3–6, 85 A.3d 1 (2014). The defendant appealed therefrom. Id., 5–6.

"In [*Wells Fargo Bank, N.A.* v. *Melahn*, supra, 148 Conn. App. 1], this court, despite the running of the law day, reversed the judgment of strict foreclosure and remanded the case to the trial court because the plaintiff had failed to comply with the foreclosure standing orders by giving timely notice to the defendant of

certain important terms of the foreclosure judgment and the adverse consequences of his continued failure to take action. Id., 4, 12–13. Moreover, the plaintiff incorrectly had certified to the court that the required notice had been provided to the defendant when, in fact, it had not been provided. Id., 6, 12–13.

"After the case was remanded to the trial court, the defendant, on June 4, 2015, filed an answer with special defenses and a four count counterclaim, which included a count alleging no specific cause of action, a count alleging a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., a count alleging breach of contract/breach of the implied covenant of good faith and fair dealing, and a count alleging fraudulent or negligent misrepresentation. The plaintiff moved to strike the special defenses and the counterclaim, alleging, in relevant part, that all counts of the counterclaim were legally insufficient. The defendant, thereafter, consented to the granting of that motion.

"On August 28, 2015, the defendant filed an amended answer with special defenses and a four count counterclaim, which included counts for (1) tortious predatory lending and foreclosure practices, (2) a CUTPA violation, (3) breach of contract/breach of the implied covenant of good faith and fair dealing, and (4) fraudulent and negligent misrepresentation. The plaintiff again moved, in relevant part, to strike all counts of the counterclaim on the ground of legal insufficiency. On September 10, 2015, the court granted the motion to strike.

"On October 26, 2015, the defendant filed a second amended answer with special defenses and an eight count counterclaim. The alleged factual basis for the defendant's counterclaim was, in relevant part, as follows: The defendant, his wife, and his mother-in-law reside in the subject property. The defendant was non-appearing in the initial foreclosure. The plaintiff had failed to comply with the uniform foreclosure standing orders by sending a letter, via regular and certified mail, to the defendant regarding the rendering of judgment. . . . The plaintiff negligently misrepresented facts that induced the defendant to enter into the mortgage and loan agreement, despite the defendant's inability to pay the loan on a long-term basis, and the plaintiff benefited from these misrepresentations. The plaintiff made several misrepresentations that it knew, or should have known, to be false, and, as a result of these misrepresentations, the defendant was harmed.

"On the basis of these alleged facts, the defendant set forth the following numbered counts in his counterclaim: (1) negligent misrepresentation, (2) intentional misrepresentation and fraud, (3) breach of contract/breach of the implied covenant of good faith and fair dealing, (4) a violation of CUTPA, (5) wanton and reckless violation of CUTPA, (6) a violation of CUTPA, (7)

a violation of CUTPA with an ascertainable loss, and (8) a violation of CUTPA with punitive damages. The plaintiff objected to the second amended answer with special defenses and counterclaim on the ground that the defendant had failed to comply with Practice Book (2015) § 10-60 (a).[3] The court sustained the objection and ordered the second amended answer with special defenses and counterclaim stricken.

"On November 12, 2015, the defendant refiled his second amended answer with special defenses and an eight count counterclaim. In response, on November 25, 2015, the plaintiff filed a motion to strike with prejudice the defendant's refiled pleading on the ground that the special defenses and each count of the counterclaim were legally insufficient. The plaintiff alleged, in relevant part, that counts one, two, four, five, six, seven, and eight of the counterclaim failed to allege required elements, and did not relate to the making, validity, or enforcement of the note and mortgage, and that they, therefore, failed the transaction test. . . . As to count three of the counterclaim, the plaintiff alleged that it failed to identify a breach by the plaintiff. The court, in a thorough memorandum of decision, issued on May 20, 2016, granted the plaintiff's motion on the grounds advanced by the plaintiff.

"On June 6, 2016, the defendant filed an 'amendment of counterclaim after motion to strike,' which sought to add a single paragraph to counts one through four, providing: 'The above facts implicate the making, validity, and enforcement of the original note and arise out of the same transactional facts that are the subject of [the] plaintiff's complaint.' In that pleading, the defendant also stated that he would be filing a motion to reargue the other stricken counts of his counterclaim within twenty days.[4]

"On June 21, 2016, the plaintiff filed a motion for judgment on the defendant's counterclaims on the basis of the court's May 20, 2016 decision striking each count.

In that motion, the plaintiff also objected to the June 6, 2016 purported amendment on the ground that it was improper and did not constitute a new pleading that required a response. The defendant did not file an objection to the motion for judgment. The court, apparently in agreement with the plaintiff, rendered judgment on the counterclaim in favor of the plaintiff."[5] (Citations omitted; footnotes in original.) *Wells Fargo Bank*, *N.A.* v. *Melahn*, supra, 181 Conn. App. 609–13. The defendant appealed from the judgment rendered on his second amended counterclaim in the plaintiff's favor and the court's striking of his second amended special defenses. Id., 609.

In resolving the defendant's appeal, this court dismissed, for lack of a final judgment, the portion of the appeal taken from the striking of the defendant's second

amended special defenses and affirmed the judgment in all other respects. Id., 614. Thereafter, in granting the defendant's petition for certification to appeal, our Supreme Court vacated this court's judgment and remanded the case with direction to reconsider the judgment in light of *Blowers*. See *Wells Fargo Bank, N.A.* v. *Melahn*, supra, 333 Conn. 923. We now revisit the defendant's appeal in accordance with our Supreme Court's order.[6]

We begin by providing "an overview of our Supreme Court's decision in [*U.S. Bank National Assn.* v. *Blowers*, supra, 332 Conn. 656]. In *Blowers*, after the mortgagee had commenced an action to foreclose the mortgage encumbering the mortgagor's real property, the mortgagor filed special defenses sounding in equitable estoppel and unclean hands, and a counterclaim sounding in negligence and violations of CUTPA. Id., 659. In support thereof, the mortgagor alleged that the mortgagee committed various acts, which occurred either after the mortgagor's default on the promissory note or after the mortgagee had commenced the foreclosure action,[7] that, inter alia, frustrated his ability to obtain a proper loan modification and increased the amount of the debt, including attorney's fees and interest, claimed by the mortgagee in the foreclosure action. Id., 661. Additionally, in support of his negligence claim, the mortgagor alleged that the mortgagee's actions had ruined his credit score, which detrimentally affected his business and personal affairs, and caused him to incur significant legal and other expenses. Id. The mortgagor also asserted that the mortgagee should be estopped from collecting the damages that it had caused by its own alleged misconduct and barred from foreclosing the mortgage at issue due to its unclean hands. Id., 661–62. With respect to his counterclaim, he sought compensatory and punitive damages, injunctive relief, and attorney's fees. Id., 662.

"The mortgagee moved to strike the mortgagor's special defenses and counterclaim, claiming that they were unrelated to the making, validity, or enforcement of the note and failed to state a claim upon which relief may be granted. Id. The trial court granted the motion to strike, concluding that the alleged misconduct by the mortgagee had occurred following the execution of the note and, therefore, neither the counterclaim nor the special defenses related to the making, validity, or enforcement thereof. Id., 662–63. Additionally, the court determined that the mortgagor had alleged sufficient facts to support his special defenses, but the court did not reach the issue of whether the counterclaim was supported by adequate facts. Id., 662. Thereafter, the court rendered a judgment of strict foreclosure. Id., 663. The mortgagor appealed to this court, which affirmed the judgment, with one judge dissenting. *U.S. Bank National Assn.* v. *Blowers*, 177 Conn. App. 622, 638, 172 A.3d 837 (2017), rev'd, 332 Conn. 656, 212 A.3d

226 (2019); id., 638–51 (*Prescott, J.,* dissenting).

"On certified appeal to our Supreme Court, the mortgagor challenged, inter alia, the propriety of the making, validity, or enforcement test, and, to the extent that the test applied in foreclosure actions, the proper scope of '"enforcement"' under the test. *U.S. Bank National Assn.* v. *Blowers*, supra, 332 Conn. 664. Our Supreme Court explained that the making, validity, or enforcement test is 'nothing more than a practical application of the standard rules of practice that apply to all civil actions to the specific context of foreclosure actions.' . . . Id., 667. Having clarified the proper standard, the court agreed with the mortgagor that 'a proper construction of "enforcement" includes allegations of harm resulting from a mortgagee's wrongful postorigination conduct in negotiating loan modifications, when such conduct is alleged to have materially added to the debt and substantially prevented the mortgagor from curing the default.' Id.

"The court observed that '[a]n action for foreclosure is "peculiarly an equitable action"'; id., 670; and that 'appellate case law recognizes that conduct occurring after the origination of the loan, after default, and even after the initiation of the foreclosure action may form a proper basis for defenses in a foreclosure action.' Id., 672. The court determined that '[t]his broader temporal scope is consistent with the principle that, in equitable actions, "the facts determinative of the rights of the parties are those in existence at the time of final hearing" . . . [and] is not inconsistent with a requirement that a defense sufficiently relates to enforcement of the note or mortgage. The various rights of the mortgagee under the note and mortgage (or related security instruments) are not finally or completely "enforced" until the foreclosure action is concluded.' (Citations omitted.) Id., 673. The court further determined that '[t]he mortgagor's rights and liabilities . . . depend not only on the validity of the note and mortgage but also on the amount of the debt. That debt will determine whether strict foreclosure or foreclosure by sale is ordered, and, in turn, whether a deficiency judgment may be recovered and the amount of that deficiency. . . . The debt may include principal, interest, taxes, and late charges owed. . . . The terms of the note or mortgage may also permit an award of reasonable attorney's fees for expenses arising from any controversy relating to the note or mortgage . . . .' (Citations omitted.) Id., 674–75.

"The court continued: 'These equitable and practical considerations inexorably lead to the conclusion that allegations that the mortgagee has engaged in conduct that wrongly and substantially increased the mortgagor's overall indebtedness, caused the mortgagor to incur costs that impeded the mortgagor from curing the default, or reneged upon modifications are the types

of misconduct that are directly and inseparably connected . . . to enforcement . . . . Such allegations, therefore, provide a legally sufficient basis for special defenses in the foreclosure action. Insofar as the counterclaims rest, at this stage, upon the same allegations as the special defenses, judicial economy would certainly weigh in favor of their inclusion in the present action."[8] (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 675–76. On the basis of that rationale, the court reversed this court's judgment and remanded the matter to this court with direction to reverse the judgment of strict foreclosure and remand the matter to the trial court for further proceedings. Id., 678." (Footnotes in original and footnote omitted.) *HSBC Bank USA*, *National Assn.* v. *Nathan*, 195 Conn. App. 179, 193–97, 224 A.3d 1173 (2020).

With *Blowers* in mind, we turn to the defendant's claims on appeal. The defendant asserts that the trial court improperly (1) struck his second amended special defenses, and (2) struck his second amended counterclaim and thereupon rendered judgment in favor of the plaintiff. We address each claim in turn.

I

We first consider the defendant's claim that the trial court improperly struck his second amended special defenses. As this court concluded in *Wells Fargo Bank*, *N.A.* v. *Melahn*, supra, 181 Conn. App. 613, this portion of the appeal was not taken from a final judgment. See *Glastonbury* v. *Sakon*, 172 Conn. App. 646, 651, 161 A.3d 657 (2017) ("'The granting of a motion to strike a special defense is not a final judgment and is therefore not appealable. . . . The striking of special defenses neither terminates a separate proceeding nor so concludes the rights of the parties that further proceedings cannot affect them.' "). *Blowers* has no bearing on this jurisdictional defect. Accordingly, we dismiss, for lack of a final judgment, the portion of the appeal taken from the striking of the second amended special defenses.

II

We next address the defendant's claim that the trial court improperly struck his second amended counterclaim and thereupon rendered judgment in the plaintiff's favor. As a preliminary matter, we discuss the scope of the claim that the defendant is raising on appeal. The defendant's second amended counterclaim set forth eight counts, with count one sounding in negligent misrepresentation, count two sounding in intentional misrepresentation and fraud, count three sounding in breach of contract/breach of the implied covenant of good faith and fair dealing, and counts four through eight sounding in CUTPA violations. During oral argument held on remand, the defendant's counsel stated in relevant part that (1) the defendant was not challenging the court's striking of count one sounding in negli-

gent misrepresentation, (2) he did not brief a claim of error regarding the court's striking of count three sounding in breach of contract/breach of the implied covenant of good faith and fair dealing, and (3) the "focus" of the appeal was the court's rulings concerning the defendant's CUTPA claims. We construe the statements made by defendant's counsel as an abandonment of any claim regarding the court's rulings as to counts one through three of the defendant's second amended counterclaim.

With respect to counts four through eight of the defendant's second amended counterclaim, the trial court summarized the defendant's allegations therein as follows: "In count four, the defendant alleges that the plaintiff's actions constitute deceptive acts and practices in violation of General Statutes § 42-110b. In count five, the defendant alleges that the plaintiff committed a wanton and reckless violation of the defendant's rights in the misrepresentations and omissions made during loan negotiations. In count six, the defendant alleges that the plaintiff's failure to provide timely notice of the foreclosure judgment to the defendant constitutes an unfair trade practice or deceptive practice in violation of § 42-110b. In count seven, the defendant further alleges that he has experienced a sustainable injury from the unfair trade practices of the plaintiff, and that he has suffered an ascertainable loss as a result. Finally, in count eight, the defendant alleges that he is entitled to punitive damages because of the plaintiff's intentional and wanton violation of the defendant's rights." In striking those counts, the court stated: "[T]he defendant, in [his second amended] counterclaim, does not allege any facts that demonstrate that the plaintiff participated in any act that violated CUTPA. Although the defendant does summarize, at great length, the plaintiff's alleged participation in the 'subprime mortgage crisis,' that summary is conclusory only and is therefore insufficient as a matter of law with regard to whether the plaintiff participated in an actual deceptive practice, or a practice that amounted to the violation of public policy. Moreover, as stated earlier, the defendant's allegations in count six of the second amended counterclaim with regard to any postjudgment activity attributable to the plaintiff does not sufficiently relate to the making, validity, or enforcement of the note or mortgage to satisfy the transaction test for counterclaims in a foreclosure action.[9] The court, accordingly, grants the plaintiff's motion to strike the defendant's second amended counterclaim in connection with counts four, five, six, seven, and eight on the ground that the defendant does not sufficiently allege facts to demonstrate violations of CUTPA." (Footnote added.)

In *Blowers*, our Supreme Court expounded on the parameters of the making, validity, or enforcement test and assumed, for purposes of that opinion, that the

special defenses and counterclaim at issue in that case "would otherwise be legally sufficient." *U.S. Bank National Assn.* v. *Blowers*, supra, 332 Conn. 670. In striking counts four, five, seven, and eight of the defendant's second amended counterclaim, the trial court did not rely on the making, validity, or enforcement test; instead, the court determined that the defendant failed to allege sufficient facts therein demonstrating CUTPA violations. Therefore, *Blowers* is not germane to the issue of whether the court erred in striking counts four, five, seven, and eight of the second amended counterclaim. In turn, we discern no error in the court striking those counts and thereupon rendering judgment in favor of the plaintiff. In fact, on appeal, the defendant does not argue, in any cognizable manner, that the court committed error in determining that he failed to allege sufficient facts demonstrating violations of CUTPA. See *Traylor* v. *State*, 332 Conn. 789, 805, 213 A.3d 467 (2019) (appellant's "complete failure to challenge what the trial court actually decided in its memoranda of decision operates as an abandonment of his claims").

In count six of his second amended counterclaim, the defendant alleged in relevant part that the plaintiff violated the uniform foreclosure standing orders, inter alia, by failing to send him notice of the November 22, 2010 foreclosure judgment within ten days following the entry thereof and that the plaintiff's violation of the uniform foreclosure standing orders constituted a violation of CUTPA. The court determined that the allegations in count six regarding "any postjudgment activity attributable to the plaintiff" did not sufficiently relate to the making, validity, or enforcement of the note or mortgage.[10] Thus, we must consider whether the court's determination constituted error in light of *Blowers*. We conclude that it did not.

Initially, we observe that, in general, "[a]ppellate review of a trial court's decision to grant a motion to strike is plenary. . . . This is because a motion to strike challenges the legal sufficiency of a pleading . . . and, consequently, requires no factual findings by the trial court . . . . In ruling on a motion to strike, the court must accept as true the facts alleged in the special defenses and construe them in the manner most favorable to sustaining their legal sufficiency. . . . The allegations of the pleading involved are entitled to the same favorable construction a trier would be required to give in admitting evidence under them and if the facts provable under its allegations would support a defense or a cause of action, the motion to strike must fail." (Citations omitted; internal quotation marks omitted.) *U.S. Bank National Assn.* v. *Blowers*, supra, 332 Conn. 667–68. Here, with *Blowers* in mind, we must determine whether the allegations supporting the sixth count of the defendant's second amended counterclaim "bear a sufficient connection to enforcement of the note or mortgage. The meaning of enforcement in this context

presents an issue of law over which we also exercise plenary review."[11] (Footnote omitted.) Id., 670.

Having reviewed the allegations of count six of the second amended counterclaim, with *Blowers* guiding our analysis, we conclude that the allegations do not sufficiently relate to enforcement of the note or mortgage. The alleged conduct by the plaintiff regarding its violation of the uniform foreclosure standing orders occurred postjudgment, that is, *after* the November 22, 2010 foreclosure judgment had been rendered. Whether the plaintiff complied with the uniform foreclosure standing orders related to enforcement of that judgment, not the enforcement of the note or mortgage. Thus, the plaintiff's actions at issue did not arise out of the same transaction as the plaintiff's foreclosure complaint. See Practice Book § 10-10.[12] Additionally, the defendant did not allege that the plaintiff's conduct substantially prevented him from curing his default or materially added to his debt. See *U.S. Bank National Assn.* v. *Blowers*, supra, 332 Conn. 675 ("allegations that the mortgagee has engaged in conduct that wrongly and substantially increased the mortgagor's overall indebtedness, caused the mortgagor to incur costs that impeded the mortgagor from curing the default, or reneged upon modifications are the types of misconduct that are directly and inseparably connected . . . to enforcement of the note and mortgage" (citation omitted; internal quotation marks omitted)). For these reasons, we conclude that the trial court did not err in striking count six of the second amended counterclaim and thereupon rendering judgment in the plaintiff's favor.

The appeal is dismissed with respect to the striking of the defendant's special defenses; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The complaint also named Danbury Radiological Associates, P.C., and Danbury Hospital as defendants, but those parties were defaulted for failure to appear and are not participating in this appeal. For purposes of clarity, we will refer to Michael John Melahn as the defendant.

[2] The full name of the plaintiff is Wells Fargo Bank, N.A., as Trustee for Option One Mortgage Loan Trust 2007-6, Asset-Backed Certificates, Series 2007-6.

[3] "Practice Book (2015) § 10-60 (a) provides: 'Except as provided in Section 10-66, a party may amend his or her pleadings or other parts of the record or proceedings at any time subsequent to that stated in the preceding section in the following manner:

" '(1) By order of judicial authority; or

" '(2) By written consent of the adverse party; or

" '(3) By filing a request for leave to file such amendment, with the amendment appended, after service upon each party as provided by Sections 10-12 through 10-17, and with proof of service endorsed thereon. If no objection thereto has been filed by any party within fifteen days from the date of the filing of said request, the amendment shall be deemed to have been filed by consent of the adverse party. If an opposing party shall have objection to any part of such request or the amendment appended thereto, such objection in writing specifying the particular paragraph or paragraphs to which there is objection and the reasons therefor, shall, after service upon each party as provided by Sections 10-12 through 10-17 and with proof of service endorsed thereon, be filed with the clerk within the time specified

above and placed upon the next short calendar list.' " *Wells Fargo Bank, N.A.* v. *Melahn*, supra, 181 Conn. App. 611–12 n.3.

[4] "But see Practice Book § 10-44, which provides: 'Within fifteen days after the granting of any motion to strike, the party whose pleading has been stricken may file a new pleading; provided that in those instances where an entire complaint, counterclaim or cross complaint, or any count in a complaint, counterclaim or cross complaint has been stricken, and the party whose pleading or a count thereof has been so stricken fails to file a new pleading within that fifteen day period, the judicial authority may, upon motion, enter judgment against said party on said stricken complaint, counterclaim or cross complaint, or count thereof. Nothing in this section shall dispense with the requirements of Sections 61-3 or 61-4 of the appellate rules.' " *Wells Fargo Bank, N.A.* v. *Melahn*, supra, 181 Conn. App. 613 n.4.

[5] In a footnote in *Wells Fargo Bank, N.A.* v. *Melahn*, supra, 181 Conn. App. 613 n.5, this court concluded that the "June 6, 2016 attempted amendment was disregarded as improper by the trial court" and that the defendant had not raised a claim of error regarding that action.

[6] Following the remand from our Supreme Court, we sua sponte ordered the parties to file supplemental briefs addressing the impact, if any, of *Blowers* on the defendant's appellate claims. The parties filed supplemental briefs in accordance with our order and, thereafter, appeared before us for oral argument.

[7] "The mortgagor alleged, inter alia, that the mortgagee had (1) offered rate reductions lowering the mortgagor's monthly mortgage payments, only to later renege on the modifications following the mortgagor's successful completion of trial payment periods, (2) increased the mortgagor's monthly payment amount of modified payments that had been agreed to following the intervention of the state's Department of Banking, (3) erroneously informed the mortgagor's insurance company that the mortgagor's real property was no longer being used as the mortgagor's residence, resulting in the cancelation of the mortgagor's insurance policy and requiring the mortgagor to replace the coverage at higher premium costs, and (4) engaged in dilatory conduct during the course of approximately ten months of mediation sessions held after the commencement of the foreclosure action. *U.S. Bank National Assn.* v. *Blowers*, supra, 332 Conn. 659–61." *HSBC Bank USA, National Assn.* v. *Nathan*, 195 Conn. App. 179, 194 n.13, 224 A.3d 1173 (2020).

[8] "In striking the mortgagor's special defenses and counterclaim, the trial court also 'acknowledged that a foreclosure sought after a modification had been reached during mediation could have the requisite nexus to enforcement of the note, but found that there had been no such modification . . . .' *U.S. Bank National Assn.* v. *Blowers*, supra, 332 Conn. 662. On appeal, the mortgagor also challenged 'the sufficiency of the allegations to establish that the parties had entered into a binding modification if such allegations are necessary to seek equitable relief on the basis of postorigination conduct.' Id., 664. Our Supreme Court determined that '[t]o the extent that the pleadings reasonably may be construed to allege that the April, 2012 intervention by the Department of Banking resulted in a binding modification, there can be no doubt that the breach of such an agreement would bear the requisite nexus [to enforcement of the note or mortgage].' Id., 675." *HSBC Bank USA, National Assn.* v. *Nathan*, supra, 195 Conn. App. 197 n.15.

[9] In striking count one of the second amended counterclaim sounding in negligent misrepresentation, in which the defendant alleged in relevant part that the plaintiff's failure to provide him with timely notice of the November 22, 2010 foreclosure judgment constituted negligent misrepresentation, the court determined that the defendant's claim did "not meet the transaction test for a counterclaim in a foreclosure action." In striking count two of the second amended counterclaim sounding in intentional misrepresentation and fraud, in which the defendant alleged in relevant part that the plaintiff made a fraudulent misrepresentation by certifying to the court that it had notified the defendant of the foreclosure judgment, the court determined that "[a]llegations regarding what occurred after the initiation of the foreclosure proceedings do not arise out of the same transaction as the original complaint."

[10] The trial court's May 20, 2016 memorandum of decision striking the defendant's second amended counterclaim and special defenses is ambiguous as to whether the court struck count six of the second amended counterclaim only on the ground that the allegations therein did not satisfy the making, validity, or enforcement test, or on the additional ground that the allegations did not allege adequate facts establishing a CUTPA violation. We need not further address this ambiguity because, mindful of *Blowers*,

we conclude that the court did not err in determining that the allegations set forth in count six did not sufficiently relate to the making, validity, or enforcement of the note or mortgage.

[11] The court in *Blowers* focused on the "enforcement" component of the making, validity, or enforcement test. *U.S. Bank National Assn.* v. *Blowers*, supra, 332 Conn. 667, 670. In the present case, it is evident that the allegations contained in count six of the second amended counterclaim did not relate to the making or validity of the note or mortgage. Accordingly, our analysis focuses on whether the allegations set forth in count six sufficiently related to the enforcement of the note or mortgage.

[12] Practice Book § 10-10 provides in relevant part: "In any action for legal or equitable relief, any defendant may file counterclaims against any plaintiff . . . provided that each such counterclaim . . . arises out of the transaction or one of the transactions which is the subject of the plaintiff's complaint . . . ." As our Supreme Court explained in *Blowers*, the making, validity, or enforcement test is "nothing more than a practical application of the standard rules of practice that apply to all civil actions to the specific context of foreclosure actions." *U.S. Bank National Assn.* v. *Blowers*, supra, 332 Conn. 667.